United States District Court
District of Massachusetts

|  |  |  |
|---|---|---|
| Sara Paulsen, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. |
| Great Bridge Attleboro Limited | ) | 21-10121-NMG |
| Partnership, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff Sara Paulsen ("Paulsen" or "plaintiff") brings this action against Great Bridge Attleboro Limited Partnership ("Great Bridge"), Stewart Property Management, Inc. ("Stewart") and Leo Bissonnette ("Bissonnette") (collectively, "defendants") for housing discrimination, assault, battery and negligence. Pending before this Court is the motion of defendant Great Bridge to dismiss the complaint for failure to state a claim and lack of subject matter jurisdiction, in which all other defendants join.

**I.   Background**

Plaintiff is a Massachusetts resident who was living in the Bliss School Apartments in Attleboro, Massachusetts during the

events giving rise to this lawsuit. That apartment building is owned by defendant Great Bridge, a New Hampshire limited partnership with its principal place of business in that state. Great Bridge retained Stewart, a New Hampshire corporation, to manage the building which, in turn, hired Bissonnette as a maintenance worker. Bissonnette is a Massachusetts resident who began working at the Bliss School Apartments in late 2016 or early 2017.

Ms. Paulsen alleges that she had been living at the Bliss School Apartments for approximately one year at the time Bissonnette was hired. Prior to his hiring, Paulsen contends that she enjoyed living there, finding the apartment building safe, clean and affordable. After his hiring, however, her opinion changed because "Bissonette began to sexual[ly] harass [her]" and, although she complained about the harassment to Stewart, none of the defendants responded appropriately.

According to the complaint, the harassment "came to a head" in July, 2020. Specifically, one day that month, Paulsen returned to the Bliss School Apartments to find her bicycle in the back of Bissonnette's truck. When she went to retrieve it, Bissonnette allegedly came running out of the building, yelled at Paulsen, grabbed her arms and "wrenched her away from the truck". Her daughter, who was present, called 9-1-1 and Paulsen

later went to the hospital due to pain in her arms and shoulders. Following the episode, plaintiff looked for new housing and, despite the fact that Stewart purportedly threatened her with eviction, she ultimately found a new residence and moved out.

Paulsen now brings a four-count complaint against defendants, alleging (1) violation of the Federal Fair Housing Act ("FHA") (Count I); (2) assault (Count II); (3) battery (Count III) and (4) negligence (Count IV). Defendants move to dismiss Count I of the complaint for failure to state a claim and the remaining state-law claims for lack of subject matter jurisdiction. As to Count I, they assert that plaintiff has failed to state a claim under the FHA because her claims 1) are time-barred and 2) arise exclusively out of post-acquisition conduct by defendants which, they assert, cannot constitute "discriminatory housing practices" under the FHA. Defendants add that, without that federal claim, this Court lacks subject matter jurisdiction over this action.

## II. Motion to Dismiss

### A. Legal Standard

To survive a motion under Fed. R. Civ. P. 12(b)(6), the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and

"plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011). A court also may not disregard properly pled factual allegations even if actual proof of those facts is improbable. Ocasio-Hernandez, 640 F.3d at 12. Rather, the relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw. Id. at 13.

### B. Application

#### i. Statute of Limitations

As a threshold matter, defendants contend that plaintiff's FHA claim is time-barred because the alleged discriminatory conduct on which her complaint depends began in or about late 2016 or early 2017, more than two years before the date the

complaint was filed.  Plaintiff responds that, for statute of limitations purposes, the relevant inquiry is when the discrimination terminated, not when it began.  Because the complaint permits the reasonable inference that the alleged sexual harassment continued into the limitations period, plaintiff submits that her claim is timely.

Claims under the FHA are subject to a two-year statute of limitations. See 42 U.S.C. § 3613(a)(1)(A).  Those claims accrue at the time the alleged discriminatory housing practices occurs or terminates, whichever is later. Id.

A defendant may assert a statute of limitations defense in a motion to dismiss if "the facts establishing the defense are clear on the face of the plaintiff's pleadings". Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 320 (1st Cir. 2008) (internal quotation marks and citation omitted). Granting a motion to dismiss on limitations grounds is appropriate, therefore, only when the complaint "leave[s] no doubt that an asserted claim is time-barred." LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998).

Here, defendants have failed to establish that plaintiff's FHA claim is time-barred.  Plaintiff plausibly states in her complaint that the alleged discriminatory conduct, i.e. sexual harassment, began in or around late 2016 or early 2017 and

continued "for more than a year". The harassment "came to a head" in July, 2020, plaintiff adds, when she purportedly was physically assaulted by Bissonnette and subsequently hospitalized. She filed her complaint in January, 2021, just six months thereafter. At this stage of litigation, the Court cannot conclude that the relevant events undoubtedly took place outside of the two-year limitation period. Accordingly, this Court will not dismiss plaintiff's FHA claim on statute of limitations grounds.

### i. The Fair Housing Act

Defendants' also move to dismiss Count I of the complaint on the ground that the conduct alleged therein cannot constitute "discriminatory housing practices" as defined by the FHA. Relying on outdated, out-of-circuit caselaw, defendants specifically contend that the FHA applies only to discriminatory conduct that impairs the right to acquire housing and not to conduct that takes place after the lease of a dwelling (i.e. "post-acquisition conduct"). Plaintiff urges the Court to conclude the opposite, asserting that nearly every circuit to address the issue has held that post-acquisition FHA claims are cognizable under 42 U.S.C. §§ 3604(b) & 3617.

The FHA makes it unlawful to, inter alia,

> discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(b). It also prohibits coercing, intimidating, threatening or interfering "with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed" any right protected by § 3604. 42 U.S.C. § 3617.

Neither provision expressly extends the scope of the FHA to post-acquisition conduct and the First Circuit Court of Appeals ("the First Circuit") has yet to decide the issue. The majority, if not all, of the circuit courts interpreting 42 U.S.C. §§ 3604 & 3617, however, have refused to limit the scope of those provisions to discriminatory conduct occurring before or at the time of signing a rental agreement. See, e.g., Francis v. King Park Manor, Inc., 992 F.3d 67, 87-89 (2d Cir. 2021) (en banc) (Lohier, C.J., concurring) (noting that there is apparently no circuit split: § 3604 reaches post-acquisition conduct) (collecting cases); see also Webb v. United States Veterans Initiative, 993 F.3d 970, 973 (D.C. Cir. 2021) ("As our sister circuits have held, nothing in section 3604 limits its scope to discriminatory conduct occurring before or at the time of signing a lease."); Revock v. Cowpet Bay W. Condo Ass'n, 853 F.3d 96, 112 (3d Cir. 2017) ("A[n FHA] claim may arise before

or, as here, after a plaintiff acquires housing"); Wetzel v. Glen St. Andrew Living Cmty., LLC, 901 F.3d 856, 861 (7th Cir. 2018) ("[T]he protections afforded by the Fair Housing Act do not evaporate once a person takes possession of her house, condominium, or apartment."). So too have other district courts in this Circuit. See, e.g., United States v. Avatar Props., Inc., No. 14-cv-502, 2015 WL 2130540, at *3 (D.N.H. May 7, 2015) (concluding that "the FHA does apply to post-acquisition discrimination").

The plain language of the statute supports those holdings. First, none of the language in either provision precludes protection against discriminatory conduct that occurs after the acquisition of a rental. See Ga. State Conf. of the NAACP v. City of LaGrange, 940 F.3d 627, 631–32 (11th Cir. 2019) ("The statute does not contain any language limiting its application to discriminatory conduct that occurs prior to or at the moment of the sale or rental."). Second, the words included therein imply that § 3604(b) covers such post-acquisition conduct in that it prohibits discrimination in the "terms", "conditions" and "privileges" of the rental of a dwelling. The terms, conditions and privileges of a rental agreement provide benefits and protections to a tenant, not just on the date of acquisition but, throughout the entire rental period. See Francis, 992 F.3d

at 88 (explaining that the words "conditions", "privileges" and "provisions of services or facilities" unambiguously "refer not just to the sale or rental itself, but to benefits and protections following the sale or rental"); see also Comm Concerning Cmty Improvement v. City of Modesto, 583 F.3d 690, 713 (9th Cir. 2009) (explaining that the word "privileges" "implicates continuing rights, such as the privilege of quiet enjoyment of the dwelling"). Accordingly, defendants' argument that the FHA precludes post-acquisition claims is unavailing and will not entitle them to dismissal of Paulsen's housing discrimination cause of action.

Although defendants do not discuss the issue, this Court will briefly explore whether sexual harassment qualifies as sex discrimination under the FHA. The First Circuit has not addressed the question but several other circuit courts have answered in the affirmative. See, e.g., Fox v. Gaines, -- F.4th --, 2021 WL 3009368, at *2 & n.5 (11th Cir. 2021) ("Every circuit court to have addressed this question has held that sexual harassment is actionable under the FHA") (collecting cases). In reaching that conclusion, those courts "look to cases interpreting Title VII, which uses language virtually identical to the FHA's". Id. at *3. Because First Circuit cases interpreting Title VII have held that "[s]exual

harassment qualifies as sex-based employment discrimination", see Gerald v. Univ. of Puerto Rico, 707 F.3d 7, 17 (1st Cir. 2013), this Court will follow the weight of authority and conclude that sexual harassment, at least in certain circumstances, may constitute sex-based discrimination under the FHA.

By reference to Title VII caselaw, there are two forms of sexual harassment: hostile housing environment and quid pro quo harassment. See Perez-Codero v. Wal-Mart Puerto Rico, Inc., 656 F.3d 19, 26 (1st Cir. 2011) (recognizing two types of sexual harassment claims under Title VII: hostile work environment and quid pro quo harassment); see also United States v. Hurt, 676 F.3d 649, 654 (8th Cir. 2012) ("Sexual harassment is actionable under the FHA when it creates a hostile housing environment or constitutes quid pro quo sexual harassment" (internal marks omitted)). To state a claim for either, plaintiff must plead plausibly, inter alia, that the alleged harassment "materially change[d] the conditions" or privileges of her tenancy. Cf. Valentin-Almeyda v. Municipality of Aguadilla, 447 F.3d 86, 95 (1st Cir. 2006) (requiring the same for a Title VII sexual harassment claim); see also West v. DJ Mortgage, LLC, 164 F. Supp. 3d 1393, 1398 (N.D. Ga. 2016) ("Sexual harassment qualifies as sexual discrimination under the FHA if that

harassment alters the terms or conditions of the rental of the property for the tenant.").

Because defendants here have not challenged whether the complaint sufficiently pleads either kind of sexual harassment, the Court will deny without prejudice their motion to dismiss Count I.  Consequently, the Court also retains federal question jurisdiction over this lawsuit and, therefore, finds no reason to dismiss the complaint on jurisdictional grounds.

## ORDER

For the foregoing reasons, the motion of defendant Great Bridge Attleboro Limited Partnership to dismiss the complaint (Docket No. 15), in which all other defendants join (Docket No. 21), is **DENIED without prejudice.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated August 5, 2021